

# DEPARTMENT OF THE ARMY
U.S. ARMY LEGAL SERVICES AGENCY
TRIAL JUDICIARY, FOURTH JUDICIAL CIRCUIT
JOINT BASE ELMENDORF-RICHARDSON, ALASKA 99505

January 14, 2013

REPLY TO
ATTENTION OF:

U.S. Army Trial Judiciary

United States District Court
District of Alaska
222 W. 7th Avenue, #4
Anchorage, AK 99513

To Whom it May Concern,

I certify that the following document is a true and accurate copy of my Ruling on the Government Motion to Reconsider Adjudication of Foreign Intelligence Surveillance Act by a Federal District Court pursuant to 50 U.S.C. §§ 1806(f) and 1825(g), dated 13 November 2012.

Timothy Grammel
Colonel, U.S. Army
Military Judge

Attachment 1

IN THE FOURTH JUDICIAL CIRCUIT, U.S. ARMY
JOINT BASE ELMENDORF-RICHARDSON, ALASKA

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | RULING – MOTION TO RECONSIDER |
| | ) | |
| Millay, William C. | ) | |
| SPC, U.S. Army | ) | |
| 164th Military Police Company | ) | |
| 793d Military Police Battalion | ) | |
| Joint Base Elmendorf-Richardson, | ) | |
| Alaska 99505 | ) | 13 November 2012 |

During an Article 39(a) session on 1 November 2012, the court orally issued a ruling on the defense Motion in Opposition to Adjudication of Foreign Intelligence Surveillance Act by a Federal District Court. The government requested a written copy of the ruling, and a written copy of the ruling was issued to the parties on 2 November 2012.

On 7 November 2012, the government submitted the Government Motion to Reconsider the Request to Transfer the Matter Concerning Title 50, U.S.C. §§ 1806(f), 1825(g) to the United [States] District Court of Alaska, with enclosures.

On 12 November 2012, the defense submitted Defense Response to Government Motion for Reconsideration.

Neither party requested an additional Article 39(a) session for oral argument or for an evidentiary hearing.

Under Rule for Courts-Martial 905(f), on request of either party or *sua sponte*, the court may reconsider its ruling.

In its ruling on 1 November 2012, the court discussed all the arguments by the defense. The only reason the court granted the defense motion was that the court interpreted the statutory provisions in 50 U.S.C. sections 1806(f) and 1825(g) as making the affidavit by the Attorney General a condition precedent to any determination of the legality of surveillance or searches by the United States District Court, whether or not its review was *in camera* and *ex parte*.

The government argues for the court to look beyond the plain language of the statute. If the language of the statute is unambiguous, then the court cannot look beyond the text in interpreting the statute. However, if the language of the statute is ambiguous, then the court can look beyond the text.

The first issue is whether the court should reconsider this part of the court's earlier ruling. With its motion to reconsider, the government enclosed orders from other courts. As the defense correctly points out in its response, the orders and opinions of these courts are not binding on this court. Also, they are not persuasive authority, because they do not discuss the interpretation of the relevant provision of 50 U.S.C. section 1806(f). However, they suggest that, as the government has argued, there may be other reasonable interpretations. A review of Federal court opinions, such as *United States v. Isa*, 923 F.2d 1300 (8th Cir. 1991) and *United States v. Belfield*, 692 F.2d 141 (D.C. Cir. 1982), confirms that 50 U.S.C. sections 1806(f) and 1825(g) are subject to more than one reasonable interpretation and are ambiguous on the pertinent issue.

Within its discretion, the court determines that reconsideration of its ruling is warranted.

Both during the Article 39(a) session on 1 November 2012 and in their recent briefs, counsel for both sides did an outstanding job presenting their arguments on the issues. With the benefit of the additional arguments in the briefs, the court was able to consider in even more detail the issue before the court.

As stated previously stated, this is an issue of statutory interpretation.

The starting point is the actual language of the text. If that text is clear and unambiguous on its face, then the text is given its plain meaning and no further interpretation is necessary. However, if a statute is capable of being reasonably interpreted to have two or more meanings, then accepted rules of statutory interpretation can be applied to assist in determining the intent of Congress.

In this case, the relevant provisions in 50 U.S.C. sections 1806(f) and 1825(g) are ambiguous. One reasonable interpretation is that the condition in the clause "if the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States" is a prerequisite to give effect to the whole sentence, including the provision for the United States district court in the same district as the authority to make the determination of whether the surveillance or search was lawfully authorized and conducted, whether or not materials are reviewed *in camera* and *ex parte*. This interpretation is reasonable, because of the location of the clause in the sentence, as explained in the court's original ruling.

Another reasonable interpretation is that the condition in the clause "if the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States" is a prerequisite only for the special procedure of an *in camera* and *ex parte* review and not for the provision for the United States district court in the same district as the authority to make the determination of whether the surveillance or search was lawfully authorized and conducted. This interpretation is reasonable, because the required contents of the affidavit in the condition – harm from disclosure or an adversary hearing – directly relate only to the

2

procedures of an *in camera* and *ex parte* review. Also, if that condition applied to the operation of the whole sentence, then it logically would be placed at the beginning of the sentence, with the three prepositional phrases that are conditions for the operation of the whole sentence. A reasonable interpretation of the text is that the condition does not apply to "the United States district court in the same district as the authority shall . . . determine whether the surveillance of the aggrieved person was lawfully authorized and conducted."

Because the provisions are ambiguous, the rules of statutory interpretation can be used to determine their meaning.

Legislative will governs interpretation. In the search for legislative intent, the court looks to the legislative objective to be obtained. The legislative history of the Foreign Intelligence Surveillance Act of 1978 (FISA) sheds lights on the objectives of FISA. One of those purposes is "to provide *a detailed procedure* for challenging such surveillance, and any evidence derived therefrom, during the course of a formal proceeding." S. REP. No. 95-701, 95th Cong., 2d Sess. (1978) 3973 (emphasis added). This language in the Senate Report indicates an intent of having a single procedure for litigating FISA issues. The Senate Report further clarifies this intent when addressing the provision that would eventually become 50 U.S.C. section 1806(f).

> Although a number of different procedures might be used to attack the legality of the surveillance, it is this procedure 'notwithstanding any other law' that must be used to resolve the question. The committee wishes to make very clear that the procedures set out in subsection (c) apply whatever the underlying rule or statute referred to in the motion. This is necessary to prevent the carefully drawn procedures in subsection (e) from being bypassed by the inventive litigant using a new statute, rule, or judicial construction.

*Id.* at 4032. The Senate Report continues on about the exact condition that is now at issue.

> The special procedures in subsection (e) cannot be invoked until they are triggered by a government affidavit that disclosure or an adversary hearing would harm the national security of the United States. If no such assertion is made, the committee envisions that mandatory disclosure of the application and order, and discretionary disclosure of other surveillance materials, would be available to the defendant, as is required under Title III. When the procedure is so triggered, however, the government must make available to the court a copy of the court order and accompanying application upon which the surveillance was based.

*Id.* The legislative history indicates an intent to have a single procedure to litigate issues of suppression and disclosure involving FISA, and within that procedure are special procedures that may or may not be triggered by a government affidavit that

3

disclosure or an adversary hearing would harm the national security of the United States.

In interpreting the statute, it is construed reasonably and as a whole with reference to the legislative scheme of which it is a part. First of all, the statute would be clear if the language "*in camera* and *ex parte*" was set off by commas and followed by the condition at issue. However, an overly rigid application of syntax should not defeat the intent of Congress. Although the syntax of the sentence may be confusing, the crux of that sentence is the determination by the United States district court of the legality of the surveillance or search. This is confirmed by the prepositional phrase at the beginning of the next and only other sentence in that subsection – "[i]n making this determination." Also, subsection (g) of section 1806 provides the following.

> If the United States district court pursuant to subsection (f) of this section determines that the surveillance was not lawfully authorized or conducted, it shall, in accordance with the requirements of law, suppress the evidence which was unlawfully obtained or derived from electronic surveillance of the aggrieved person or otherwise grant the motion of the aggrieved person. If the court determines that the surveillance was lawfully authorized and conducted, it shall deny the motion of the aggrieved person except to the extent that due process requires discovery or disclosure.

The meaning of a statute should be determined not from a single sentence. In context, subsection (f) of § 1806 provides the single procedure intended by Congress to determine the legality of surveillance under FISA. There are no other such procedures provided in 50 U.S.C. sections 1801-1811. This analysis for 50 U.S.C. section 1806(f) also applies to 50 U.S.C. section 1825(g).

Because the statutory provision is ambiguous, the court used both intrinsic and extrinsic aids in interpreting it. Although the syntax of the sentence is confusing, both the intent of Congress reflected in the legislative history and the overall statutory scheme shed light on the meaning of 50 U.S.C. sections 1806(f) and 1825(g). The condition in the clause "if the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States" is not a prerequisite for the operation of 50 U.S.C. sections 1806(f) and 1825(g), under which the United States district court in the same district as the authority makes the determination of whether the surveillance or search was lawfully authorized and conducted. It is a prerequisite only for the special procedures of an *in camera* and *ex parte* review.

This interpretation of the meaning of those statutory provisions is consistent with judicial interpretations over three decades.

> [T]he government may forestall the defendant's suppression or discovery motions by filing a petition with the United States District Court in the area

4

where the criminal trial is taking place asking for a determination of the legality of the surveillance. If the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States, then the district court is supposed to make this determination *ex parte* based upon an *in camera* examination of the relevant materials.

*United States v. Belfield*, 692 F.2d 141, 146 (D.C. Cir. 1982).

The government may seek its own determination of the legality of the surveillance by filing a petition in the United States District Court where the criminal trial is pending. If the Attorney General files an affidavit stating that disclosure or an adversary hearing would harm the national security of the United States, then the district court makes this determination *ex parte* based on an *in camera* examination of the relevant documents.

*United States v. Isa*, 923 F.2d 1300, 1303 (8th Cir. 1991). Although the precise issue before this court was not at issue in those cases, their interpretations of the meaning of 50 U.S.C. section 1806(f) are clear.

The court concludes that the affidavit of the Attorney General is not a condition precedent for 50 U.S.C. sections 1806(f) and 1825(g) to be in effect. Therefore, the United States District Court for the District of Alaska has the authority to make the determination of whether the surveillance or search was lawfully authorized and conducted. The affidavit is a prerequisite for the District Court to use the special procedures of an *in camera* and *ex parte* review.

**RULING.** Accordingly, the Government Motion to Reconsider the Request to Transfer the Matter Concerning Title 50, U.S.C. §§ 1806(f), 1825(g) to the United [States] District Court of Alaska is **GRANTED**; and the defense Motion in Opposition to Adjudication of Foreign Intelligence Surveillance Act by a Federal District Court, in Appellate Exhibit VIII, is **DENIED**. The court has signed the attached Judicial Court Order Directing Removal of FISA Related Matters to U.S. District Court Pursuant to Title 50, U.S.C. §§ 1806(f) and 1825(g).

Ordered this 13th day of November 2012:

TIMOTHY GRAMMEL
COL, JA
Military Judge