KAREN L. LEOFFLER
United States Attorney
District of Alaska
DEBORAH CURTIS
Trial Attorney
Counterespionage Section,
National Security Division
U.S. Department of Justice
(202) 233-2113; Deborah.Curtis@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA
ANCHORAGE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 3:13-mc-00005-RRB |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| WILLIAM COLTON MILLAY, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S UNCLASSIFIED EXHIBITS**

UNCLASSIFIED EXHIBIT 1

## UNITED STATES ARMY TRIAL JUDICIARY
## FOURTH JUDICIAL CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | REQUEST FOR DISCOVERY |
| ) | |
| Millay, William C. ) | |
| SPC, US Army ) | |
| Rear Detach, 164th MP Company ) | |
| 793d MP Battalion ) | 15 August 2012 |
| Joint Base Elmendorf-Richardson, AK ) | |

1. The accused, through counsel, and under Article 46, UCMJ, R.C.M. 701, M.R.E., Rule 3.8 of the Army Rules of Professional Conduct for Lawyers, and the Fifth and Sixth Amendments to the U.S. Constitution, requests that the United States produce and permit the defense to inspect, copy, or photograph each of the following things which are known, or should through the exercise of due diligence be known, to the United States or its agents.

The Defense further requests the Prosecution respond to this request in writing by NLT 29 August 2012 setting out by line item confirming or denying after diligent search by the United States including but not limited to trial counsel, the Federal Bureau of Investigation (FBI), Army CID, Army Counterintelligence, whether any material implicated by the request exists and in the event that the United States is unwilling to produce the item in question as requested, the reasons for denial of the requested item.

Hereinafter, the term *Government* includes **Federal, state and local governments**, to the extent that such agencies are participating or have participated in the investigation of this case. The specific items requested below are examples, not limitations, of the items requested under a cited provision.

    a. Under R.C.M. 701(a)(1), any papers which accompanied the charges when submitted for recommendations or referred, the convening orders, any sworn or signed statement relating to an offense charged which is in the possession of the Government.

    b. Under R.C.M. 701(a)(2)(A), any books, papers, documents, photographs, tangible objects, buildings, or places, or copies of portions thereof, which are within the possession, custody or control of the Government, and which are material to the preparation of the defense or are intended for use by the trial counsel as evidence in the prosecution case in chief at trial or were obtained from or belong to the accused. *See, U.S. v. Simmons*, 38 MJ 376 (CMA 1993). This request includes photographs that are the basis of Charge IV, Specification 1 and the story board pertaining to the recovery of the body an enemy combatant who was killed by an missile fired from an AH-64 Apache on or about November 2010; and the story board pertaining to the response to the IED explosion involving the Afghan National Police just outside of FOB Ramrod on or about January 2010.

c. Under R.C.M. 701(a)(2)(B), any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody or control of the Government, the existence of which is known to the trial counsel and which is material to the preparation of the defense or are intended for use by the trial counsel as evidence in the prosecution's case in chief at trial. *See, U.S. v. Simmons*, 38 MJ 376 (CMA 1993).

d. Under R.C.M. 701(a)(3), the names, phone numbers and addresses of the witnesses the trial counsel intends to call either in the prosecution case in chief.

e. Under R.C.M. 701(a)(4), any records of prior convictions or court-martial convictions of the accused which may be offered on the merits, for impeachment, or in the presentencing phase of trial.

f. Under R.C.M. 701(a)(5), any and all information, including the names, phone numbers and addresses of the witnesses, and records of nonjudicial punishment relating to the accused the Government intends to offer during the presentencing proceedings under R.C.M. 1001(b).

g. Under R.C.M. 701(a)(6), any evidence, known or which through the exercise of reasonable diligence should be known to the trial counsel, which may negate the guilt of the accused, reduce the degree of guilt of the accused, or reduce the punishment. This includes, but is not limited to, any prior convictions or arrests of the Government witnesses, military investigatory organizations, or on file at the Criminal Records Center; previous records of nonjudicial punishment of the Government witnesses; any information concerning an abnormal mental status of any witness; any evidence of other character, conduct, or bias bearing on witness credibility under M.R.E. 608 and 609.

h. Under R.C.M. 914, any previous statement, written or oral, made by a witness the prosecution intends to call on the merits or in the presentencing phase, and the anticipated subject matter of that witness's testimony.

i. Under M.R.E. 301(c)(2), disclosure of any immunity or leniency pertaining to witnesses or to potential witnesses. This includes but is not limited to any anticipated or completed pretrial agreements that may or may not contain an offer of cooperation, any written or oral statements from those witnesses used to support the pretrial agreement or grant of immunity, or any other communication expressly or implicitly indicating that any type of adverse personnel action (either administrative, nonjudicial, or court martial action) will not be initiated against an individual.

j. All evidence of character or conduct or bias bearing on the credibility of government witnesses including all agents of the FBI in the control of or known to the United States. Giglio v. United States, 405 U.S. 15, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). This is specifically meant to include information relating to any assistance to or favorable treatment with respect to any pending civil, criminal, or administrative dispute between the government and the witness, and any other matters which could arguably create an interest or bias in the witness in favor of the government or against the defense or act as an inducement to testify to color or shape testimony.

2

k. Under M.R.E. 612, any writing or document used by a witness to prepare for trial.

l. Copies of all signed, unsigned, typed, drafts or handwritten statements taken by investigators in the instant case and companion cases.

m. Disclosure of all investigations of any type or description, pending initiated, ongoing or recently completed which pertain to alleged misconduct of any type or description committed by a government witness United States v. Stone, 40 M.J. 420 (C.M.A. 1994) including CID, FBI, and ATF agents.

n. Under M.R.E. 304(d)(1) and 801(d)(2), all statements, oral and written, by the accused that are relevant to the case to the Government; and notice as to which statements are intended to be introduced as evidence against the accused. United States v. Dancy, 38 M.J. 1,4 (C.M.A. 1993).

o. Under M.R.E. 311(d)(1), disclosure of all evidence seized from the person or property of the accused or believed to be owned or possessed by the accused, that the prosecution intends to offer into evidence against the accused in trial; all physical evidence that will be offered against the accused.

p. All statements and affidavits supporting requests, which pertain to this case, whether or not granted, for authorization to search and seize or apprehend. This includes all DA Forms 3745-R.

q. Notice of government intent to offer evidence seized from the person or property of the accused that was not disclosed prior to arraignment. M.R.E. 311(d)(2)(B).

r. Under R.C.M. 701(a)(2)(a), copies of all audio and written recorded wire and telephone intercepts from 18 May 2011 through 18 June 2012 to and from SPC Millay's cell phone as well as to the following phone numbers: (202) 939-8913, (202) 965-1181, (202) 239-6000. If such recordings exists it pertains to Charge II.

s. Copies of all audio/video statements by the accused to all law enforcement agencies.

t. Copies of all law enforcement agencies' written reports, transcripts, and agent notes pertaining to the accused.

u. Copies of all operation plans/execution/briefs/debriefs by all law enforcement agencies.

v. All records relating to the forensic evidence gathered in this case, generated by any law enforcement or military agency in conjunction with the taking of evidence, or testing of evidence during the investigation of the alleged offenses, including specifically (if applicable): evidence collection forms or logs; and chain-of-custody records.

3

w. Under M.R.E. 321(c)(1), disclosure of all evidence of prior identification of the accused at a line-up or other identification process that the prosecution intends to enter against the accused at trial.

x. Under M.R.E. 404(b), reasonable notice in advance of trial of the general nature of any evidence of other crimes, wrongs, or acts that the prosecution intends to introduce for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake of fact or accident and the government's theory of admissibility in this case.

y. Under M.R.E. 404(a), reasonable notice in advance of trial of the general nature of any character trait and evidence that will be relied upon to prove such a trait that the Government intends to introduce as evidence at trial.

z. The names and contact information of all Government(to include CID, FBI, Army Intelligence) investigators as well as federal investigators to include FBI who have participated or are presently participating in the investigation of the instant case.

aa. The contents of all CID accreditation files for all CID investigators who have participated or are presently participating in the investigation of the instant case. The personnel files of all law enforcement agents involved in this case. United States v.Henthorn, 931 F.2d 29 (9th Cir. 1991). *See also* United States v. Tillman, 680 F.2d 1357 (11th Cir. 1982); United States v. Bizzard, 674 F.2d 1382 (11th Cir. 1982).

bb. Access to inspect and to obtain a photocopy copy of any and all original CID or other investigative files, wherever located, to include all case notes, agent's activity summaries, interim, final, and supplemental CID reports, photographs, slides, diagrams, sketches, drawings, electronic recordings, handwritten notes, interview worksheets, and any other information in the CID case file or associated with this case.

cc. All personal or business notes, memoranda, and writings prepared by law enforcement investigators in this case which are not furnished under any other provisions of this request.

dd. Any information or evidence known to the Government, or which may become known to the Government through the exercise of due diligence, which is exculpatory in nature or otherwise favorable to the accused for the merits or on sentencing. See Brady v. Maryland, 73 U.S. 83 (1963); United States v. Agurs, 427 U.S. 97 (1976). This includes any relevant impeachment evidence as well. United States v. Bagley, 87 L.Ed.2d 481 (1985). This includes exculpatory evidence contained in law enforcement files. United States v. Kinzer, 39 M.J. 559 (A.C.M.R. 1994).

ee. Copies of any administrative or other non-criminal investigations related, directly or indirectly, to this case or other companion cases for example, AR 15-6 investigations, reports of survey, line of duty investigations, commander's inquiries, collateral, Article 139, Equal Opportunity, or Inspector General investigations, and any other like or similar investigation(s), including but not limited to the investigation conducted by Major General Lloyd Miles.

4

ff. Any derogatory information, including criminal history or prior disciplinary record, for any witnesses the Government intends to call either on the merits or on sentencing. This includes the conditions of separation and characterization of service for any witnesses with prior military experience.

gg. The local unit files (or SMIF), ERB, ORB, DA Form 2-1 or DA Form 2A for all witnesses the Government intends to call on the merits or on sentencing.

hh. Copies of writings, emails and the substance of oral conversations or briefings and any other forms of communication between the FBI, Army Intelligence, the Commanding General of Joint Base Elmendorff-Richardson, the Staff Judge Advocate, trial counsels, and the chain of command of concerning this case and companion cases.

ii. Copies of all emails, summarized oral/telephone conversations, and written communication between the trial counsels and Dr. Amanda Mackinnon, 706 Board President. Copies of all emails, summarized oral conversations indicating that SPC Millay, a Soldier assigned to Joint Base Elmendorf-Richardson, was seen at Fort Wainwright Behavior Health.

jj. Copies of all Memoranda of Understandings or Agreements or other written documents concerning any joint agreements between the U.S. Army to include but not limited to CID and Army Counterintelligence with respect to any law enforcement and operation including but not limited to any formal written communications related to SPC Millay and any verbal communications thereof and other federal, state, or local agencies to include FBI and any other counterintelligence agencies.

kk. Copy of search authorization and all other information/documents granted by LTC Stephen E. Gabavics to search Building 791, Room 219B, as well has SPC Millay's vehicle with license plate 2038DB, both located on JBER, AK.

ll. The identity of and contact information for the FBI Special Agent who served as an undercover law enforcement agent and all instructions related to her with regards to her interaction with SPC Millay including but not limited to behavioral science profile of SPC Millay, personal information regarding SPC Millay, suggested methods of approach, instructions related to SPC Millay's disclosure of contact with a potential foreign agent, and instructions related to materials to seek from SPC Millay. United States v. Hawkins, 19 C.M.R. 261, 1955.

mm. All evidence in control of or known to the United States concerning the mental status of the accused or any government witness. Material sought specifically includes medical records reflecting psychiatric diagnosis or treatment or head injury of any type and drug and/or alcohol addiction diagnosis or rehabilitation records. United States v. Brakefield, 43 C.M.R. 828 (A.C.M.R. 1971), United States v. Eschalomi, 23 M.J. 12 (C.M.A. 1985).

ll. Notice of, and the curricula vitae for, all expert witnesses the government intends to call in its case-in-chief and during presentencing. The defense requests the government disclose the number of times each expert has been qualified as an expert witness in a military or civilian court, the types of court each witness has testified in (civilian or military), the locations (city and

5

state) of each of these courts and the civil and criminal docketed number of each of those cases. The defense further requests disclosure of any information, or evidence considered by the expert prior to testifying.

mm. Copies of any and all emails, written or oral communications within the accused's leadership chain, up to and including the Secretary of the Army, pertaining to status of the case, information regarding the case, questions about the case, and guidance concerning the case

nn. All hearsay statements, oral or written, intended to be offered at trial under M.R.E. 807, the particulars of the statements and the name, address, and telephone number of the declarants.

mm. Notice of all evidence known to the trial counsel that affects the credibility of any defense witness or government witnesses.

oo. All evidence in rebuttal which is exculpatory in nature or material to punishment. United States v. Trimper, 460 M.J. 460 (C.M.A. 1989), cert. denied, 110 S.Ct.; United States v. Dancy, 38 M.J. 1 (C.M.A. 1993).

pp. All evidence which is otherwise material to the defense's preparation, whether exculpatory or not, and not otherwise already released. Kyles v. Whitley, 514 US 419, 115 S. Ct. 1555 (1995) and United States v. Adens, 56 MJ 724 (A.C.C.A. 2002).

qq. All statements, oral or written (to specifically include electronic mail), made by the summary, special or general courts-martial convening authorities in this case or companion cases or by any officer superior to the general court-martial convening authority, which:

> 1) in any manner, withholds authority from a subordinate commander the authority to: dispose of the accused's case under the U.C.M.J., to impose nonjudicial punishment upon the accused, to order the accused's separation or release form active duty or active duty for training or to order the accused into pretrial confinement.

> 2) provides guidance to any subordinate commander concerning appropriate levels of disposition and punishment of the offenses, whether made before or after the offenses as issue in this case.

> 3) in any manner indicates that the relevant officer has anything other than an official interest in the matter, United States v. Jeter, 35 M.J. 442, 445 (C.M.A. 1992).

rr. Disclosure of any information known to government agents which, in any manner, indicates that a person who forwarded the charges with recommendation now is, or recently has been suspected of committing an offense under the U.C.M.J., United States v. Nix, 40 M.J. 6 (C.M.A. 1994).

6

ss. Disclosure of personnel records and panel member questionnaires of all prospective court members, under R.C.M. 912(a)(1). In the event that questionnaires have not been prepared or otherwise do not exist, this constitutes a request for such under R.C.M. 912 (a)(1).

tt. Disclosure of all advice, written or oral, provided to the convening authority concerning the selection of the court-martial panel in the present case, under R.C.M. 912(a)(2).

uu. The convening order and all amending orders. All requests for excusal of court members and any written documents memorializing the denial or approval of the request. R.C.M. 701(a)(1)(B).

vv. All matters which the government intends to have judicially noticed. M.R.E. 201.

2. Any determination of materiality in these matters is viewed by the Defense as within the province of the Defense and the Court; any question of materiality, therefore, should be brought to the attention of the Defense and decided by the Court.

3. This request is made on the grounds that the Defense cannot effectively prepare for trial without the production and inspection of the items requested.

4. The defense requests equal and adequate opportunity to interview witnesses and inspect evidence. Specifically, the defense requests the trial counsel to instruct all of the witnesses and potential witnesses under military control, including those on any retired list or pending ETS or PCS to cooperate with the defense when contacted by the defense for purposes of interviewing these persons or otherwise obtaining information from them. Art. 46; R.C.M. 701(e).

5. If, before or during the court-martial, the government discovers additional evidence or material previously requested or required to be produced, which is subject to discovery or inspection under R.C.M. 701, the government shall promptly notify the defense of the existence of the additional evidence or material. R.C.M. 701(d); United States v. Adens, 56 MJ 724 (A.C.C.A. 2002); Leka v. Portuondo, 257 F.3d 89 (2d Cir. 2001).

6. Under R.C.M. 701(d), this is a continuing request for the items described above. Should the Prosecution oppose this request or any part therein, the Defense requests immediate notice thereof and the reasons for opposition.

7. The Defense acknowledges that this request potentially implicates classified information as much as requested items or existence of such information is classified, the Defense requests that the Government respond to this discovery request in an unclassified and a classified version.

7

8. The defense acknowledges that certain of these requests may have been partially complied with prior to this motion. Those matters previously provided need not be duplicated.

CHARLES SWIFT
Civilian defense counsel

JOY PREMO
CPT, JA
Defense Counsel

8

**UNCLASSIFIED EXHIBIT 2**

## IN THE FOURTH JUDICIAL CIRCUIT, U.S. ARMY
## JOINT BASE ELMENDORF-RICHARDSON, ALASKA

| | |
|---|---|
| UNITED STATES | ) |
| | ) |
| v. | ) **RULING – MOTION TO RECONSIDER** |
| | ) |
| Millay, William C. | ) |
| SPC, U.S. Army | ) |
| 164th Military Police Company | ) |
| 793d Military Police Battalion | ) |
| Joint Base Elmendorf-Richardson, | ) |
| Alaska  99505 | ) **13 November 2012** |

During an Article 39(a) session on 1 November 2012, the court orally issued a ruling on the defense Motion in Opposition to Adjudication of Foreign Intelligence Surveillance Act by a Federal District Court. The government requested a written copy of the ruling, and a written copy of the ruling was issued to the parties on 2 November 2012.

On 7 November 2012, the government submitted the Government Motion to Reconsider the Request to Transfer the Matter Concerning Title 50, U.S.C. §§ 1806(f), 1825(g) to the United [States] District Court of Alaska, with enclosures.

On 12 November 2012, the defense submitted Defense Response to Government Motion for Reconsideration.

Neither party requested an additional Article 39(a) session for oral argument or for an evidentiary hearing.


Under Rule for Courts-Martial 905(f), on request of either party or *sua sponte*, the court may reconsider its ruling.

In its ruling on 1 November 2012, the court discussed all the arguments by the defense. The only reason the court granted the defense motion was that the court interpreted the statutory provisions in 50 U.S.C. sections 1806(f) and 1825(g) as making the affidavit by the Attorney General a condition precedent to any determination of the legality of surveillance or searches by the United States District Court, whether or not its review was *in camera* and *ex parte*.

The government argues for the court to look beyond the plain language of the statute. If the language of the statute is unambiguous, then the court cannot look beyond the text in interpreting the statute. However, if the language of the statute is ambiguous, then the court can look beyond the text.

The first issue is whether the court should reconsider this part of the court's earlier ruling. With its motion to reconsider, the government enclosed orders from other courts. As the defense correctly points out in its response, the orders and opinions of these courts are not binding on this court. Also, they are not persuasive authority, because they do not discuss the interpretation of the relevant provision of 50 U.S.C. section 1806(f). However, they suggest that, as the government has argued, there may be other reasonable interpretations. A review of Federal court opinions, such as *United States v. Isa*, 923 F.2d 1300 (8th Cir. 1991) and *United States v. Belfield*, 692 F.2d 141 (D.C. Cir. 1982), confirms that 50 U.S.C. sections 1806(f) and 1825(g) are subject to more than one reasonable interpretation and are ambiguous on the pertinent issue.

Within its discretion, the court determines that reconsideration of its ruling is warranted.

Both during the Article 39(a) session on 1 November 2012 and in their recent briefs, counsel for both sides did an outstanding job presenting their arguments on the issues. With the benefit of the additional arguments in the briefs, the court was able to consider in even more detail the issue before the court.

As stated previously stated, this is an issue of statutory interpretation.

The starting point is the actual language of the text. If that text is clear and unambiguous on its face, then the text is given its plain meaning and no further interpretation is necessary. However, if a statute is capable of being reasonably interpreted to have two or more meanings, then accepted rules of statutory interpretation can be applied to assist in determining the intent of Congress.

In this case, the relevant provisions in 50 U.S.C. sections 1806(f) and 1825(g) are ambiguous. One reasonable interpretation is that the condition in the clause "if the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States" is a prerequisite to give effect to the whole sentence, including the provision for the United States district court in the same district as the authority to make the determination of whether the surveillance or search was lawfully authorized and conducted, whether or not materials are reviewed *in camera* and *ex parte*. This interpretation is reasonable, because of the location of the clause in the sentence, as explained in the court's original ruling.

Another reasonable interpretation is that the condition in the clause "if the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States" is a prerequisite only for the special procedure of an *in camera* and *ex parte* review and not for the provision for the United States district court in the same district as the authority to make the determination of whether the surveillance or search was lawfully authorized and conducted. This interpretation is reasonable, because the required contents of the affidavit in the condition – harm from disclosure or an adversary hearing – directly relate only to the

2

procedures of an *in camera* and *ex parte* review. Also, if that condition applied to the operation of the whole sentence, then it logically would be placed at the beginning of the sentence, with the three prepositional phrases that are conditions for the operation of the whole sentence. A reasonable interpretation of the text is that the condition does not apply to "the United States district court in the same district as the authority shall . . . determine whether the surveillance of the aggrieved person was lawfully authorized and conducted."

Because the provisions are ambiguous, the rules of statutory interpretation can be used to determine their meaning.

Legislative will governs interpretation. In the search for legislative intent, the court looks to the legislative objective to be obtained. The legislative history of the Foreign Intelligence Surveillance Act of 1978 (FISA) sheds lights on the objectives of FISA. One of those purposes is "to provide *a detailed procedure* for challenging such surveillance, and any evidence derived therefrom, during the course of a formal proceeding." S. REP. NO. 95-701, 95th Cong., 2d Sess. (1978) 3973 (emphasis added). This language in the Senate Report indicates an intent of having a single procedure for litigating FISA issues. The Senate Report further clarifies this intent when addressing the provision that would eventually become 50 U.S.C. section 1806(f).

> Although a number of different procedures might be used to attack the legality of the surveillance, it is this procedure 'notwithstanding any other law' that must be used to resolve the question. The committee wishes to make very clear that the procedures set out in subsection (c) apply whatever the underlying rule or statute referred to in the motion. This is necessary to prevent the carefully drawn procedures in subsection (e) from being bypassed by the inventive litigant using a new statute, rule, or judicial construction.

*Id.* at 4032. The Senate Report continues on about the exact condition that is now at issue.

> The special procedures in subsection (e) cannot be invoked until they are triggered by a government affidavit that disclosure or an adversary hearing would harm the national security of the United States. If no such assertion is made, the committee envisions that mandatory disclosure of the application and order, and discretionary disclosure of other surveillance materials, would be available to the defendant, as is required under Title III. When the procedure is so triggered, however, the government must make available to the court a copy of the court order and accompanying application upon which the surveillance was based.

*Id.* The legislative history indicates an intent to have a single procedure to litigate issues of suppression and disclosure involving FISA, and within that procedure are special procedures that may or may not be triggered by a government affidavit that

3

disclosure or an adversary hearing would harm the national security of the United States.

In interpreting the statute, it is construed reasonably and as a whole with reference to the legislative scheme of which it is a part. First of all, the statute would be clear if the language "*in camera* and *ex parte*" was set off by commas and followed by the condition at issue. However, an overly rigid application of syntax should not defeat the intent of Congress. Although the syntax of the sentence may be confusing, the crux of that sentence is the determination by the United States district court of the legality of the surveillance or search. This is confirmed by the prepositional phrase at the beginning of the next and only other sentence in that subsection – "[i]n making this determination." Also, subsection (g) of section 1806 provides the following.

> If the United States district court pursuant to subsection (f) of this section determines that the surveillance was not lawfully authorized or conducted, it shall, in accordance with the requirements of law, suppress the evidence which was unlawfully obtained or derived from electronic surveillance of the aggrieved person or otherwise grant the motion of the aggrieved person. If the court determines that the surveillance was lawfully authorized and conducted, it shall deny the motion of the aggrieved person except to the extent that due process requires discovery or disclosure.

The meaning of a statute should be determined not from a single sentence. In context, subsection (f) of § 1806 provides the single procedure intended by Congress to determine the legality of surveillance under FISA. There are no other such procedures provided in 50 U.S.C. sections 1801-1811. This analysis for 50 U.S.C. section 1806(f) also applies to 50 U.S.C. section 1825(g).

Because the statutory provision is ambiguous, the court used both intrinsic and extrinsic aids in interpreting it. Although the syntax of the sentence is confusing, both the intent of Congress reflected in the legislative history and the overall statutory scheme shed light on the meaning of 50 U.S.C. sections 1806(f) and 1825(g). The condition in the clause "if the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States" is not a prerequisite for the operation of 50 U.S.C. sections 1806(f) and 1825(g), under which the United States district court in the same district as the authority makes the determination of whether the surveillance or search was lawfully authorized and conducted. It is a prerequisite only for the special procedures of an *in camera* and *ex parte* review.

This interpretation of the meaning of those statutory provisions is consistent with judicial interpretations over three decades.

> [T]he government may forestall the defendant's suppression or discovery motions by filing a petition with the United States District Court in the area

4

where the criminal trial is taking place asking for a determination of the
legality of the surveillance. If the Attorney General files an affidavit under
oath that disclosure or an adversary hearing would harm the national
security of the United States, then the district court is supposed to make
this determination *ex parte* based upon an *in camera* examination of the
relevant materials.

*United States v. Belfield*, 692 F.2d 141, 146 (D.C. Cir. 1982).

> The government may seek its own determination of the legality of the
> surveillance by filing a petition in the United States District Court where
> the criminal trial is pending. If the Attorney General files an affidavit
> stating that disclosure or an adversary hearing would harm the national
> security of the United States, then the district court makes this
> determination *ex parte* based on an *in camera* examination of the relevant
> documents.

*United States v. Isa*, 923 F.2d 1300, 1303 (8th Cir. 1991). Although the precise issue
before this court was not at issue in those cases, their interpretations of the meaning of
50 U.S.C. section 1806(f) are clear.

The court concludes that the affidavit of the Attorney General is not a condition
precedent for 50 U.S.C. sections 1806(f) and 1825(g) to be in effect. Therefore, the
United States District Court for the District of Alaska has the authority to make the
determination of whether the surveillance or search was lawfully authorized and
conducted. The affidavit is a prerequisite for the District Court to use the special
procedures of an *in camera* and *ex parte* review.


**RULING.** Accordingly, the Government Motion to Reconsider the Request to Transfer
the Matter Concerning Title 50, U.S.C. §§ 1806(f), 1825(g) to the United [States] District
Court of Alaska is **GRANTED**; and the defense Motion in Opposition to Adjudication of
Foreign Intelligence Surveillance Act by a Federal District Court, in Appellate Exhibit
VIII, is **DENIED**. The court has signed the attached Judicial Court Order Directing
Removal of FISA Related Matters to U.S. District Court Pursuant to Title 50, U.S.C. §§
1806(f) and 1825(g).


**Ordered this 13th day of November 2012:**

TIMOTHY GRAMMEL
COL, JA
Military Judge

5

IN THE FOURTH JUDICIAL CIRCUIT, U.S. ARMY
JOINT BASE ELMENDORF-RICHARDSON, ALASKA

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | JUDICIAL COURT ORDER DIRECTING |
| ) | REMOVAL OF FISA RELATED |
| ) | MATTERS TO U.S. DISTRICT COURT |
| Millay, William C. ) | PURSUANT TO TITLE 50, U.S. CODE |
| SPC, U.S. Army ) | §§ 1806(f) AND 1825(g) |
| 164th Military Police Company ) | |
| 793d Military Police Battalion ) | |
| Joint Base Elmendorf-Richardson, Alaska ) | 13 November 2012 |
| 99505 | |

1. I, the undersigned, am the presiding military judge for the General Court-Martial in the case of *United States v. Specialist William C. Millay.* Specialist Millay faces an attempted espionage charge. Having been duly designated to serve as the military judge under the provision of Article 26, Uniform Code of Military Justice (Title 10, U.S. Code, section 826), I have received the government's Notice of Intent to Proceed Pursuant to Title 50, United States Code, sections 1806(f) and 1825(f), dated 28 September 2012.

2. Under the provision of that statute, the Defense's Discovery Request, dated 15 August 2012, and the defense's disclosure of its intent to file a Motion to Suppress in both section B of the Electronic Docket Request, dated 6 August 2012, and its Motion for a Continuance, dated 14 September 2012, invoke the provisions of Title 50, United States Code, sections 1806(f) and 1825(f), under which the United States district court in the same district as this court-martial determines whether the surveillance and search were lawfully authorized and conducted. If the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States, then that determination is based on an *in camera* and *ex parte* review of the relevant documents. Given the government's representation that the Attorney General will file an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States and that the government previously provided this court and defense with notice under Title 50, United States Code, sections 1806(c) and 1825(d), I hereby direct that all matters in this court-martial falling under the Title 50, United States Code, sections 1806(c) and 1825(d) notice and either sought by defense in their 15 August 2012 Discovery Request relating to which the accused has received aggrieved person notice or sought to be suppressed by defense, be removed to the United States District Court for the District of Alaska, Anchorage Division.

So ordered the 13th day of November 2012;

TIMOTHY GRAMMEL
Colonel, U.S. Army
Military Judge

**UNCLASSIFIED EXHIBIT 3**

# IN THE NINTH JUDICIAL CIRCUIT, U.S. ARMY
## JOINT BASE ELMENDORF-RICHARDSON, ALASKA

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | NOTICE OF INTENT TO USE |
| ) | FOREIGN INTELLIGENCE |
| ) | SURVEILLANCE ACT |
| Millay, William Colton ) | INFOMRA TION |
| SPC, U.S. Army, ) | |
| 164th Military Police Company, ) | 11 September 2012 |
| 793d Military Police Battalion ) | |
| Joint Base Elmendorf-Richardson, AK 99505 ) | |

The United States, through its undersigned trial counsel Captain Christopher Chatelain, hereby provides notice to defendant Specialist William Colton Millay and to the Court, that pursuant to Title 50, United States Code, Section 1806( e) and 1825(d) the United States intends to offer into evidence, or otherwise use or disclose in any proceedings in the above-captioned matter, information obtained or derived from electronic surveillance and physical search conducted pursuant to the Foreign Intelligence Surveillance Act of 1978 (FISA), as amended, 50 U.S.C. §§ 1801-1829.

CHRISTOPHER CHATELAIN
CPT, JA
Trial Counsel

I hereby certify that this document has been duly served on both the military judge and the accused, by and through defense counsel, on this day the 11 of September 2012.

*[signature]*
CHRISTOPHER CHATELAIN
CPT, JA
Trial Counsel

2

Case 3:13-mc-00005-RRB   Document 5-1   Filed 02/15/13   Page 20 of 20